# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AEL FINANCIAL, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 06 C 6875 |
| | ) |
| DAVID TESSIER, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff AEL Financial, LLC's ("AEL") motion to remand. For the reasons stated below, we deny the motion to remand.

## BACKGROUND

AEL alleges that in January 2005, it entered into an equipment lease ("Lease") with Defendant David Tessier ("Tessier") under which Tessier leased certain computer equipment for Tessier Chiropractic. The computer equipment was allegedly provided by TNG Systems. (Compl. Group Ex.A). Tessier also allegedly signed a separate guaranty agreement ("Guaranty"), individually guaranteeing all

1

obligations under the Lease. According to AEL, under the terms of the Lease, Tessier was obligated to make monthly installments and since December 9, 2005, Tessier has been delinquent on his payments. AEL claims that under the terms of the Lease, Tessier's payment schedule has been accelerated and Tessier owes $39,005.20 in Lease payments and $14,366.20 in late charges. AEL brought the instant action in Illinois state court and included in its complaint a breach of contract claim (Count I) and a breach of guaranty claim (Count II). Tessier subsequently removed this case to federal court and AEL now seeks to have the case remanded back to Illinois state court.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441, a "civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1447, "[I]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. . . ." 28 U.S.C. § 1447(c). The party removing the case to federal court and thus "invoking federal jurisdiction bears the burden of demonstrating its

existence. . . ." *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 679 (7th Cir. 2006)(stating that "[f]ederal courts are courts of limited jurisdiction" and that "'[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction'")(quoting in part *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375 (1994)).

**DISCUSSION**

I.  Diversity Subject Matter Jurisdiction

AEL first argues in its motion to remand that this court does not have diversity subject matter jurisdiction. AEL claims that "[t]o support removal to this Court, [Tessier] claims federal question and diversity of citizenship as his basis for subject matter jurisdiction." (Mot. 2). However, Tessier did not assert in his notice of removal that this court has diversity subject matter jurisdiction. (Rem. 1). There is no mention in the notice of removal regarding diversity, or of 28 U.S.C.§ 1332, the diversity statute. Rather, Tessier specifically stated in his notice of removal, and continues to argue in his answer to the motion to remand, that this court has jurisdiction over this case because it is related to a bankruptcy action. Thus, Tessier

3

did not base the removal on diversity subject matter jurisdiction and Tessier does not contest AEL's position that this court lacks diversity subject matter jurisdiction.

II. Federal Question Subject Matter Jurisdiction

AEL argues that the court also lacks federal question subject matter jurisdiction over the instant action. Tessier asserted in his notice of removal that this court has subject matter jurisdiction over this action pursuant to 28 U.S.C.§ 157, 28 U.S.C.§ 1443, and 28 U.S.C.§ 1452. (Rem. 1). Tessier contends that AEL's claims in the instant action and Tessier's affirmative defenses are connected to *In re Today's Destiny, Inc.* ("Bankruptcy Proceeding"), case number "05-90080," which is a bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of Texas, Houston Division ("Southern District"). Tessier also contends that the instant action is connected to case number "06-3285," which is an adversary proceeding ("Adversary Action") related to the Bankruptcy Proceeding before the bankruptcy court in the Southern District. (Ans. 2). Tessier states that since this case has been removed to federal court, he intends to move for the referral of this matter to a bankruptcy court judge in this district and then move to transfer this case to Southern District where a class of plaintiffs are pursuing a fraud action against defendants that include AEL.

A. Jurisdiction Over Bankruptcy Proceedings

In regards to the removal of cases related to bankruptcy proceedings, pursuant to 28 U.S.C. § 1452, a party can "remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under [28 U.S.C. § 1334]." 28 U.S.C.§ 1452(a). Pursuant to 28 U.S.C. § 1334, a federal district court generally has "original but not exclusive jurisdiction of all civil proceedings:" (1) "arising under" Title 11 of the United States Bankruptcy Code ("Title 11"), (2) "arising in . . . cases" brought under Title 11, or (3) "related to cases [brought] under [T]itle 11." 28 U.S.C. § 1334(b).

Tessier does not argue that AEL's claims in the instant action and, Tessier's affirmative defenses arise under Title 11, or arise in a case brought under Title 11. Tessier contends that AEL's claims and his affirmative defenses are related to the Bankruptcy Proceeding and Adversary Action, stating that they are "inextricably tied to the" Bankruptcy Proceeding and Adversary Action. (Ans. 1-2). A claim is deemed to be related to a bankruptcy proceeding if "the dispute 'affects the amount

5

of property for distribution [,i.e., the debtor's estate,] or the allocation of property among creditors.'" *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1991)(quoting in part *In re Xonics, Inc.,* 813 F.2d 127, 131 (7th Cir. 1987)); *In re FedPak Systems, Inc.*, 80 F.3d 207, 213-14 (7th Cir. 1996)(citing *In re Memorial Esates, Inc.*).

### B. Allegations in Adversary Action

In the second amended complaint in the Adversary Action, the plaintiffs include a class of health care professionals that claim to have been victims of a fraudulent marketing scheme perpetrated by Today's Destiny, Inc. ("Today's Destiny"), its officers, and its "alter ego business fronts" (collectively referred to as "Today's Destiny Associates"). (AA SA Compl. Par. 26).

#### 1. Alleged Promises by Today's Destiny Associates

Today's Destiny Associates allegedly promised the plaintiffs that for approximately $950 per month, Today's Destiny Associates would provide each plaintiff with "highly technical, specially designed and configured, computer system containing software specifically designed and licensed to [Today's Destiny Associates] and [their] client doctors for use in [their] patient marketing program."

(AA SA Compl. Par. 38, 46). Today's Destiny Associates also allegedly guaranteed certain results, such as acquiring a certain number of new customers a month, and provided that refunds would be paid if the benchmarks were not reached. (AA SA Compl. Par. 64).

### 2. Alleged Fraud By Today's Destiny Associates

The plaintiffs contend that Today's Destiny, Inc., the debtor in the Bankruptcy Proceeding, has "fraudulently conveyed or otherwise concealed assets belonging to [Today's Destiny] and bankruptcy estate. . . ." (AA SA 5). The plaintiffs claim that for "vastly inflated sums," Today's Destiny Associates actually provided the plaintiffs with "virtually worthless equipment," consisting of "very cheap off-the-rack computers" that were "available at any store for a few hundred dollars" and that "contained neither the represented software nor any other licensed marketing software." (AA SA Compl. Par. 2, 25, 48, 54). Some of the computers also allegedly contained "illegal[ly] obtained 'pirated' operating systems software." (AA SA Compl. Par. 48). The plaintiffs were also allegedly provided with computer dialers that had "inferior technology" and were "purchased at minimal cost" and then sold to the plaintiffs "at a price between $18,000 and $80,000." (AA SA Compl. Par. 63). In addition, when the plaintiffs did not obtain new customers as promised,

7

Today's Destiny Associates allegedly refused to honor the refund guarantees and planned from the outset to use loopholes to avoid honoring the guarantees.

### 3. Alleged Involvement of Finance Companies in Fraud

The plaintiffs also contend that the finance companies such as AEL "financed illusory marketing equipment in the form of a grossly over-valued generic PC computer." (AA SA Compl. Par. 51). Today's Destiny Associates "directly referred" the plaintiffs to financing companies for leases of the computer equipment, including American Enterprise Leasing, Inc., which AEL acknowledges is an entity that it purchased. (Compl. 1, Par. 2); (AA SA Compl. Par. 21). The employees of the finance companies such as AEL allegedly "facilitated and encouraged" the fraudulent scheme in order to obtain commissions. (AA SA Compl. Par. 25). The plaintiffs also contend that finance companies such as AEL entered into "collusive arrangements" and "conspired with" Today's Destiny Associates and that the finance companies "facilitated [the] fraud through disguised secured loans. . . ." (AA SA Compl. 5, Par. 26, 30, 32). The plaintiffs contend that each referral to the finance companies was "in actuality a pre-arranged agreement between one of the [f]inance [c]ompanies" and Today's Destiny Associates. (AA SA Par. 50-51). The plaintiffs also allege that the finance companies, including AEL, "knew of the fraudulent

8

manner in which the [plaintiffs] were induced to sign the ostensible rental agreements, and facilitated that fraud by funding" the fraudulent scheme. (AA SA Compl. Par 25). The plaintiffs contend that they are now each "faced with a finance company demanding tens of thousands of dollars for marketing equipment, which apparently consists of a low-grade, generic PC, similar to that available at any store for a few hundred dollars." (AA SA Compl. Par. 54).

### C. Connection Between AEL and Adversary Action

AEL argues that the instant action is simply a "run of the mill" state law breach of contract case that should be resolved in Illinois state court. (Mot. 4). While the complaint on its surface appears to be a straightforward state action, certain pertinent facts have not been included in AEL's complaint or its motion to remand that show that the instant action is intertwined with the Bankruptcy Proceeding. AEL does not contest, for example, that its predecessor, which appears in the caption of the complaint in the instant action, has been named as a defendant in the Adversary Action. In addition, AEL does not contest Tessier's representation that the Lease at issue in this case is one of the leases that the plaintiffs in the Adversary Action contend were part of the alleged fraudulent scheme by Today's Destiny Associates and the finance companies. Nor does AEL dispute Tessier's

9

contentions that TNG, Inc., an alter ego of Today's Destiny, "was to provide the purported marketing services to Tessier" and that "Tessier was then in turn induced to finance said marketing services under the" Lease. (Ans. Par. 7); (AA SA Compl. Par. 61). The Lease itself, which is attached to AEL's complaint, specifically identifies "TNG Systems" as the provider of the computer equipment for the Lease and AEL does not contest Tessier's contention that TNG Systems is also an alter ego of Today's Destiny Associates. (Compl. Group Ex. A). AEL's breach of contract claims relating to liability under the Lease are thus directly related to the fraudulent scheme allegedly perpetrated by Today's Destiny Associates.

AEL contends that Today's Destiny is not involved in the instant action and AEL accuses Tessier of "attempting to drag into the fray" Toady's Destiny Associates, which were not a party to the Lease. (Reply 6). While AEL may prefer to downplay any involvement with Today's Destiny, AEL acknowledges its connections with Today's Destiny. For example, as is indicated above the Lease itself identifies an alter ego of Today's Destiny. as the provider of the computer equipment. AEL also undeniably stands as an accused in the Adversary Action by the class of plaintiffs of being a co-conspirator with Today's Destiny Associates in the alleged fraudulent marketing scheme. In the instant action, Tessier also asserts as affirmative defenses that AEL is barred from recovering under the Lease because

AEL participated in a fraud, which is a reference to the scheme at issue in the Adversary Action. Further, Tessier also asserts the defense of illegality, that the Lease is void, and that AEL was negligent in failing to investigate the products and services involved in the marketing program and discover the alleged fraudulent scheme. Clearly, the claims brought by AEL and the affirmative defenses asserted by Tessier fall within the scope of the Adversary Action.

### D. Impact of Dispute on Distribution of Assets

Tessier argues that the dispute in the instant action and the Adversary Action will affect the distribution of assets to creditors of Today's Destiny in the Bankruptcy Proceeding. Tessier has "filed an unliquidated Proof of Claim in the Bankruptcy Proceeding, citing actual loss to date and potential loss to be incurred as a result of the suit by AEL against Tessier." (Ans. Par. 12). In regards to the Adversary Action, the plaintiffs assert that they "vigorously dispute liability under the Leases" and that "[p]iecemeal litigation in other forums would present inconsistent, conflicting and protracted adjudication of the amounts of Today's Destiny claims, and prevent Today's Destiny victims from making their claims in the Today's Destiny bankruptcy case in a timely manner." (AA SA Compl. Par. 26). The plaintiffs state that to the extent that they are liable at all under the leases at

issue, such liability would only serve to reduce their claims over the bankruptcy estate. (AA SA Compl. Par. 26). The plaintiffs also contend that "[i]nclusion of the [f]inance [c]ompanies," such as AEL, "will facilitate tracing of significant funds collected by Today's Destiny and wrongfully diverted by Today's Destiny's officers" and "[i]t will assist in identifying individuals who obtained payments and commissions from [the d]efendants, funds that are or may be Trustee property." (AA SA Compl. Par. 31). Tessier also contends that "[r]ecovery against the lease finance companies in the Adversary [Action], of which AEL is a part under the Chapter 7 Trustee's Second Amended Complaint . . . , will increase the size of the estate and sums which will ultimately be distributed to creditors such as Tessier." (Ans. Par. 20). AEL has avoided addressing in either its motion or reply any of the specific facts involving the Bankruptcy Proceeding. AEL has not responded to Tessier's contentions concerning the impact that this case will have upon the distribution of property in the Bankruptcy Proceeding. Instead, AEL refuses to acknowledge any connection between itself and Today's Destiny and persists in its reply brief with its position that the instant action involves nothing more than a simple contractual dispute between AEL and Tessier. Based upon the evidence presented before us, we agree with Tessier that AEL's claims and Tessier's affirmative defenses are closely intertwined with the issues being litigated in the Adversary Action and that the

claims and defenses are related to the Bankruptcy Proceeding. Therefore, based on the above, we conclude that this court has federal question subject matter jurisdiction in the instant action.

III. Withdrawal From Bankruptcy Court

AEL states in its reply brief that if the court concludes that the claims in this action are related to the Bankruptcy Proceeding that the court should exercise its discretion to withdraw this action from the bankruptcy court in the Northern District of Illinois. However, such a request is improper since the case has not yet been referred to the bankruptcy court. The request is also improper since AEL seeks such relief in only a cursory manner and the first time that AEL does so is in its reply brief, thus depriving Tessier of the opportunity to weigh in on the issue. *See Aliwoli v. Gilmore*, 127 F.3d 632, 635 (7th Cir. 1997)(quoting *United States v. Feinberg,* 89 F.3d 333, 340-41 (7th Cir. 1996) for proposition that "[t]he reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court"). Therefore, we deny AEL's request for withdrawal from the bankruptcy court.

IV. Equitable Remand

AEL requests in the alternative that this court enter an equitable remand. A

district court can remand a case that was removed because of bankruptcy jurisdiction based upon "any equitable ground. . . ." *In re United States Brass Corp.,* 110 F.3d 1261, 1265 (7th Cir. 1997)(defining equitable ground as "any appropriate ground"). AEL's request for an equitable remand is improper since it was not mentioned at all in AEL's motion to remand. AEL first proposes such relief in its reply brief for its motion to remand, thus depriving Tessier of any opportunity to respond to AEL's arguments. *Aliwoli,* 127 F.3d at 635. We also note that, regardless, the equities favor denying the request for a remand. Therefore, we deny AEL's request for an equitable remand.

## CONCLUSION

Based on the foregoing analysis, we deny AEL's motion to remand in its entirety.

                                           _____
                                           Samuel Der-Yeghiayan
                                           United States District Court Judge

Dated: March 12, 2007